**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

HATTIE IRVING,

       Plaintiff,

vs.                                                    Case No.  3:21-cv-1002-MMH-MCR

SAM ST. JOHN, in his Official
Capacity as Sheriff of Suwannee
County, et al.,

       Defendants.

                              /

**O R D E R**

**THIS CAUSE** is before the Court on the Motion to Dismiss Count IV by

Defendant Sam St. John, in his official capacity (Doc. 15; Motion), filed

November 3, 2021.  In the Motion, St. John requests that the Court dismiss

Count IV of Plaintiff Hattie Irving's Second Amended Complaint and Demand

for Jury Trial (Doc. 12; Complaint).  Irving timely filed a response in opposition

to the Motion.  See Plaintiff's Response and Memorandum in Opposition to

Defendant Sam St. John's Motion to Dismiss Count IV (Doc. 24; Response), filed

November 24, 2021.  Accordingly, this matter is ripe for review.

**I.    Legal Standard**

In ruling on a motion to dismiss, the Court must accept the factual

allegations set forth in the complaint as true.  See Ashcroft v. Iqbal, 556 U.S.

662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see

also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir.

2002).  In addition, all reasonable inferences should be drawn in favor of the

plaintiff.  See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010).  Nonetheless,

the plaintiff must still meet some minimal pleading requirements.  Jackson v.

Bellsouth Telecomm., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citations

omitted).  Indeed, while "[s]pecific facts are not necessary[,]" the complaint

should "'give the defendant fair notice of what the . . . claim is and the grounds

upon which it rests.'"  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam)

(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Further,

the plaintiff must allege "enough facts to state a claim to relief that is plausible

on its face."  Twombly, 550 U.S. at 570.  "A claim has facial plausibility when

the pleaded factual content allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678

(citing Twombly, 550 U.S. at 556).  A "plaintiff's obligation to provide the

grounds of his entitlement to relief requires more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do[.]"

Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372

F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions

of facts or legal conclusions masquerading as facts will not prevent dismissal")

(internal citation and quotations omitted).  Indeed, "the tenet that a court must

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680.  Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

## II.    Background[1]

This case arises from a criminal investigation that occurred in 2018 in Suwannee County, Florida.  On March 24, 2018, a store clerk at a Family Dollar Store called 911 and reported an alleged theft to Public Safety Communications Officer R. Black, an employee of Suwannee County.  Complaint ¶ 10.  According to Irving, the store clerk told Officer Black that the suspect's license plate number was "IAEZ28" and confirmed that the fourth letter was "Z as in Zebra" and "Z as in Zulu."  Id. ¶¶ 11–12.  However, when Officer Black searched for the tag number IAEZ28, the corresponding vehicle did not match the store clerk's description of the suspect's vehicle.  Id. ¶ 12.  Irving alleges that, despite knowing that the store clerk reported "IAEZ28," Officer Black then changed the

---

[1]  In considering the Motion, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to Irving, and accept all reasonable inferences that can be drawn from such allegations.  Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa County, 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Complaint and may well differ from those that ultimately can be proved.

Z to a C and chose to search for the tag number "IAEC28." Id. ¶¶ 13–14.  The

vehicle with the tag number IAEC28 was similar to the vehicle described by the

store clerk.  Id. ¶¶ 20–22.  Irving owned the vehicle with the tag number

IAEC28.  Id. ¶ 22.  Irving asserts that Officer Black relayed IAEC28 as the

suspect's tag number to the investigating officer, Michael Landis (who is also a

defendant in this action).  Id. ¶¶ 14, 19.  Irving maintains that the store clerk

never told Officer Landis that the tag number was IAEC28.  Id. ¶ 28.  Irving

also alleges that Officer Landis never viewed the store's surveillance video of

the alleged crime and that the store clerk "did not, in fact, positively identify

Plaintiff Irving."  Id. ¶¶ 25, 27.  According to Irving, Officer Landis recorded the

incorrect tag number on his police report and used the tag number as a basis

for probable cause to obtain a warrant for Irving's arrest.  Id. ¶ 15.  Irving was

arrested on the warrant on June 16, 2018, and spent approximately one week

in jail.  Id. ¶ 33.  After a period of discovery in the ensuing criminal case, on

January 16, 2019, the State Attorney's Office dropped all of the charges against

Irving.  Id. ¶ 37.

Based on these and other allegations, Irving initiated this action on

August 27, 2021, by filing a complaint in the Circuit Court of the Third Judicial

Circuit, in and for Suwannee County, Florida.  See State Court Docket (Doc. 1-

2), filed October 6, 2021.  St. John and Officer Landis removed the case to this

Court on October 6, 2021.  See Notice of Removal (Doc. 1).  With leave of the

Court, Irving filed the currently operative Complaint on October 28, 2021.  See generally Complaint.  As relevant here, in Count IV of the Complaint, Irving asserts a negligence claim against St. John in his official capacity as Sheriff of Suwannee County[2] for his employees' alleged negligent acts that led to Irving's arrest.  See id. ¶¶ 62–73.

## III.    Parties' Arguments

In the Motion, St. John argues that Count IV should be dismissed because Irving has not established "the existence of any legal duty owed to" Irving "that was breached by" St. John.  Motion at 4.  St. John asserts that Irving's claim is barred by the "black letter law holding that there is no duty owed to the public" at large "for enforcement of the laws."  Id. at 6.  According to St. John, Irving has not shown that he owed her any special duty.  See id. at 6–7.  In addition, St. John argues that, even if he did owe a special duty to Irving, he is immune from suit for the discretionary decision to make an arrest.  See id. at 7–8.  St. John maintains that a false arrest claim is the proper vehicle for addressing Irving's allegations, not a negligence claim.  See id. at 8.

In her Response, Irving contends that the errors of St. John's employees in recording the incorrect license plate number and failing to view the store's

---

[2] A suit against a public official in his official capacity is treated as a suit against the local government entity he represents, in this case, Suwannee County.  See Kentucky v. Graham, 473 U.S. 159, 165–66 (1985); Owens v. Fulton County, 877 F.2d 947, 951 n.5 (11th Cir. 1989).

surveillance video placed Irving into a foreseeable zone of risk.  See Response at 9–10.  Irving argues that she alleged that Officer Black gave the incorrect tag number to Officer Landis, despite knowing that the store clerk reported the tag number as IAEZ28, not IAEC28.  See id. at 10–11.  Irving then asserts that, because Officer Black knew of the error, he had a duty to take action to correct his mistake or to otherwise lessen the risk that Irving would be arrested.  See id. at 11.  According to Irving, even if the officers did not actually know that they were making an error in the license plate number, they still had a duty to exercise reasonable care in recording information and investigating the case because it was foreseeable that someone could be wrongly accused.  See id. at 10.  Finally, Irving argues that Officer Landis placed her into a foreseeable zone of risk by failing to review "readily available video evidence to determine whether a crime actually occurred."  Id. at 11–12.

## IV.    Discussion

Having reviewed the filings and applicable law, the Court finds that Irving has failed to state a negligence claim under Florida law.  Although the State of Florida and its subsidiaries such as municipalities are generally immune from tort liability, Florida has waived its immunity "under circumstances in which the state agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state."  Lewis v. City of St. Petersburg, 260 F.3d 1260, 1262 (11th Cir. 2001)

(quoting Fla. Stat. § 768.28(1)).  Thus, when presented with a negligence suit against a state or its subsidiary, the Court "should first determine whether the circumstances alleged would subject a private person to liability under Florida law." Id. (citing Kaisner v. Kolb, 543 So. 2d 732, 734 (Fla. 1989)).  To state a claim of negligence, a plaintiff must allege the elements of duty, breach, causation, and damages.[3]  Id. (citing Paterson v. Deeb, 472 So. 2d 1210, 1214 (Fla. 1st DCA 1985)); see also Wynn v. City of Lakeland, 727 F. Supp. 2d 1309, 1316 (M.D. Fla. 2010).[4]  If the plaintiff can meet this burden, then the Court must decide "whether the challenged actions are nonetheless acts which required the exercise of basic governmental discretion, as opposed to implementation of an already established policy." Lewis, 260 F.3d at 1262.  A "governmental agency is immune from tort liability based upon actions that involve its 'discretionary' functions." Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, 402 F.3d 1092, 1117 (11th Cir. 2005) (quoting Lewis, 260 F.3d at 1266); see also Gelbard v. City of Miami, 845 F. Supp. 2d 1338, 1340 (S.D. Fla. 2012) (quoting Lewis, 260 F.3d at 1264).

---

[3] Under Florida law, a municipality can be vicariously liable for the tortious acts of its employees. See Young v. Borders, No. 5:13–cv–113–Oc–22PRL, 2014 WL 11444072, at *21 (M.D. Fla. Sept. 18, 2014); Saballos v. Bonilla, No. 05–21928–CIV, 2006 WL 3940552, at *8 (S.D. Fla. Dec. 5, 2006).

[4] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

Here, Irving has failed to state a negligence claim because she has not satisfied her initial burden to plausibly allege that Officer Black and Officer Landis owed her, specifically, a duty of care. Whether a duty of care exists is a "minimal threshold legal requirement for opening the courthouse doors" and it "poses a question of law that the court must answer before permitting a negligence claim to proceed before the trier of fact." Wallace v. Dean, 3 So. 3d 1035, 1046 (Fla. 2009) (internal citations omitted). According to the Florida Supreme Court, "there has never been a common law duty to individual citizens for the enforcement of police power functions."[5] Trianon Park Condo. Ass'n, Inc. v. City of Hialeah, 468 So. 2d 912, 914–15 (Fla. 1985). Thus, law enforcement officers generally have no legal duty of care to conduct investigations without negligence. See Fernander v. Bonis, 947 So. 2d 584, 589–90 (Fla. 4th DCA 2007); Pritchett v. City of Homestead, 855 So. 2d 1164, 1165 (Fla. 3d DCA 2003) (per curiam) ("[I]t has been recognized that the negligent conduct of police investigations does not give rise to a cause of action because the duty to protect citizens and enforce the law is one owed generally to the public."); State v. Kowalski, 617 So. 2d 1099, 1099–1100 (Fla. 5th DCA 1993). Similarly, "it is well established that the government does not owe individual citizens a common

---

[5] "The operation of a 911 emergency call system is part of the law enforcement and protection of public safety service provided by a sheriff['s] office." Pierre v. Jenne, 795 So. 2d 1062, 1063 (Fla. 4th DCA 2001).

law duty to convey accurate information or maintain accurate records." <u>Florez v. Broward Sheriff's Off.</u>, 270 So. 3d 417, 420–21 (Fla. 4th DCA 2019); <u>see</u> <u>Moore v. Dep't of Corr.</u>, 833 So. 2d 822, 823–24 (Fla. 4th DCA 2002) (per curiam). Indeed, "[t]he responsibility to enforce the laws for the good of the public cannot engender a duty to act with care toward any one individual, unless an official assumes a special duty with regard to that person." <u>Pollock v. Fla. Dep't of Highway Patrol</u>, 882 So. 2d 928, 935 (Fla. 2004) (per curiam). Therefore, unless Officer Black and Officer Landis assumed a special duty with regard to Irving, they owed her no duty of care.

Irving argues that Officer Black and Officer Landis owed her a special duty of care after they placed her in a zone of risk by recording the tag number as IAEC28 and failing to view the store's surveillance video. <u>See</u> Response at 10–12. However, the Court finds that the zone of risk analysis is inapplicable to the facts alleged here. The Florida Supreme Court has instructed that a special tort duty arises "when law enforcement officers become directly involved in circumstances which place people within a 'zone of risk' by creating or permitting dangers to exist, by taking persons into police custody, detaining them, or otherwise subjecting them to danger." <u>Pollock</u>, 882 So. 2d at 935; <u>see also</u> <u>City of Pinellas Park v. Brown</u>, 604 So. 2d 1222, 1225–26 (Fla. 1992) (finding that officers created a zone of risk by engaging in a high-speed pursuit with as many as twenty police vehicles); <u>Brown v. Miami-Dade County</u>, 837 So.

2d 414, 417–18 (Fla. 3d DCA 2001) (holding that officers created a zone of risk by conducting a sting operation in a hotel). But, "[t]he premise underlying [the zone of risk] theory is that a police officer's decision to assume control over a particular situation or individual or group of individuals is accompanied by a corresponding duty to exercise reasonable care." Pollock, 882 So. 2d at 935. Consequently, "[w]here police officers . . . have not arrived on the scene or assumed any degree of control over the situation, the 'zone of risk' analysis has no application." Id. at 935–36.

In Pollock, the plaintiffs alleged that a Florida Highway Patrol dispatcher negligently failed to enter a 911 call reporting a stalled truck on a dark road into the computer system for assignment. See id. at 931. As a result, no law enforcement officers were dispatched, and two motorists collided with the stalled truck and died. See id. at 930–31. In declining to apply the zone of risk analysis to find the existence of a duty owed to the decedents, the Florida Supreme Court noted that the Florida Highway Patrol had neither arrived on the scene nor "assumed any degree of control over the situation." Id. at 935–36. Likewise, here, neither of the officers assumed any degree of control over Irving or her surroundings. Officer Black was not "on the scene" when answering the 911 call, and Irving was not present when Officer Landis arrived at the store to investigate.

Although the officers' actions may have increased the risk that Irving would be arrested, their conduct, as pled in the Complaint, is similar to the alleged misconduct identified in cases where Florida courts have refused to find that a special duty of care has arisen. See Fernander, 947 So. 2d at 589–90 (finding no duty to conduct a polygraph examination non-negligently); Pritchett, 855 So. 2d at 1165 (finding no duty when the plaintiff alleged negligent supervision of an investigation); Alvarez-Mena v. Miami-Dade County, 305 So. 3d 63, 69–70 (Fla. 3d DCA 2019) (finding that no negligence claim could be brought against detectives for filing false police reports where the reports led to the plaintiff's prosecution). Moreover, while the officers' knowledge of their alleged mistakes may be relevant to claims for malicious prosecution, the Court is not persuaded that Irving's allegations about the officers' knowledge plausibly support a finding of the existence of a special duty. See Alvarez-Mena, 305 So. 3d at 69 (holding that "there is no need for a cause of action for negligent reporting" when law enforcement officers make false reports that lead to prosecution "because such behavior potentially gives rise to a malicious prosecution claim"); Moore, 833 So. 2d at 823–24 (rejecting the argument that the Department of Corrections had a duty to revoke a warrant for a violation of probation after the Department received notice that the probation had been terminated). Therefore, the Court concludes that, when the officers used the tag number IAEC28 and allegedly failed to watch the

surveillance video, they did not place Irving into a zone of danger such that they assumed a special tort duty owed to Irving.

In reaching this conclusion, the Court finds Irving's reliance on <u>Glenney v. Forman</u>, 936 So. 2d 660 (Fla. 4th DCA 2006), and <u>Mosby v. Harrell</u>, 909 So. 2d 323 (Fla. 1st DCA 2005), to be unavailing.  In <u>Glenney</u>, a clerk of court named the victim of a crime as the criminal defendant in a case.  <u>See</u> 936 So. 2d at 661. Because of the clerk's error, the victim was summoned to an arraignment where she and the prosecutor informed the court of the mistake.  <u>See</u> <u>id.</u>  Despite this, the clerk again issued a summons directing the victim to appear at another arraignment, and, when she did not appear, the court issued a warrant for her arrest.  <u>See</u> <u>id.</u>  After the victim was arrested, she sued the clerk.  <u>See</u> <u>id.</u> Deciding what may have been "an issue of first impression," the Fourth District Court of Appeal (DCA) held that, "under the facts as presented in Glenney's complaint," the clerk had a "special duty to act non-negligently once the Clerk's office became aware of the mistake . . . and failed to correct it."  <u>Id.</u> at 662 & n.2.

In <u>Mosby</u>, the plaintiff brought negligence claims against the Florida Department of Law Enforcement (FDLE) for its allegedly negligent testing of a DNA sample in a sexual assault case.  <u>See</u> 909 So. 2d at 325–26.  The plaintiff, who was a police officer, asserted that the FDLE incorrectly reported that the DNA sample matched him.  <u>See</u> <u>id.</u> at 326.  The trial court dismissed the claims, but the First DCA reversed, holding that the FDLE had a duty because "it was

reasonably foreseeable that negligent testing and reporting would imperil the [plaintiff's] continued employment as a police officer." See id. at 325–27.

Here, the Court does not find Glenney and Mosby to be persuasive because the Court is not convinced that the Florida Supreme Court would extend the holdings of those cases to the facts alleged in Irving's Complaint. As discussed above, Irving's allegations concern the run-of-the-mill investigatory misconduct or failures that Florida courts routinely hold do not state a cause of action for negligence.[6] Thus, Irving has not plausibly alleged that Officer Black and Officer Landis placed her in a zone of risk that created a special duty.

Because Irving has not plausibly alleged that Officer Black and Officer Landis owed her a special duty, she cannot maintain a negligence claim against their employer, St. John.[7] As such, the Motion is due to be granted, and Count IV of the Complaint is due to be dismissed. Accordingly, it is

**ORDERED:**

1.    The Motion to Dismiss Count IV by Defendant Sam St. John, in his official capacity (Doc. 15) is **GRANTED**.

---

[6]    Irving also discusses two federal district court decisions, Rutkowski v. City of Titusville, No. 6:15-CV-454-ORL-37, 2015 WL 5254311 (M.D. Fla. Sept. 9, 2015), and Walker v. Palecek, No. 3:05-CV-760-J, 2006 WL 335803 (M.D. Fla. Feb. 14, 2006). Neither convinces the Court that a duty arises under the circumstances alleged here.

[7]    Because Irving has not plausibly pled the existence of a duty owed to her, the Court need not decide whether the officers' actions were discretionary or operational. See Pollock, 882 So. 2d at 938. However, the Court notes that, to the extent Irving challenges the decisions to file a charging affidavit and to arrest her, St. John is immune from suit because those actions were discretionary. See Everton v. Willard, 468 So. 2d 936, 937 (Fla. 1985).

2.      Count IV of the Second Amended Complaint (Doc. 12) is

**DISMISSED**.

**DONE AND ORDERED** in Jacksonville, Florida, on August 9, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

lc30
Copies to:

Counsel of Record