UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

HATTIE IRVING,

        Plaintiff,

vs.                               Case No.  3:21-cv-1002-MMH-MCR

SAM ST. JOHN, in His Official
Capacity as Sheriff of Suwannee
County, et al.,

        Defendants.

_____/

**O R D E R**

**THIS CAUSE** is before the Court on the Motion for Summary Judgment

by Defendants Sam St. John, in His Official Capacity, and Michael Landis (Doc.

40; Motion), filed July 20, 2022.   In the Motion, St. John and Landis

(collectively, Defendants) request that the Court grant summary judgment in

their favor as to all remaining counts of Plaintiff Hattie Irving's Second

Amended Complaint and Demand for Jury Trial (Doc. 12; Complaint), filed

October 28, 2021.   In support of the Motion, Defendants submitted the

depositions of Irving, Landis, and Jennifer Turner; an audio recording of a 911

call; and several documents and photographs from a state criminal

investigation and prosecution.   See Notice of Filing Documents in Support of

Defendants Sam St. John, in His Official Capacity, and Michael Landis Motion

for Summary Judgment (Doc. 39; Defts.' Notice of Filing), filed July 20, 2022.

Irving filed a response in opposition to the Motion.  See Plaintiff's Response and

Memorandum in Opposition to Defendants' Motion for Summary Judgment

(Doc. 48; Response), filed August 16, 2022.  In support of her Response, Irving

filed the same three deposition transcripts; her affidavit; several exhibits from

Landis's deposition, including several audio recordings; and documents from

the state criminal investigation and prosecution.  See Plaintiff's Notice of Filing

Documents in Opposition to Defendants' Motion for Summary Judgment (Doc.

46; Pl.'s Notice of Filing), filed August 15, 2022.  Defendants then filed a reply.

See Reply to Plaintiff's Response and Memorandum in Opposition to

Defendants' Motion for Summary Judgment (Doc. 50; Reply), filed August 23,

2022.[1]  Accordingly, this matter is ripe for review.

## I.  Background Facts[2]

On March 24, 2018, Irving and her boyfriend James Newbern visited a

Family Dollar store in Suwannee County, Florida.  See Defts.' Notice of Filing,

Ex. 11: Deposition of Hattie Irving (Doc. 39-11; Irving Dep.) at 8, 22–24; Defts.'

---

[1]  The Motion, Response, and Reply all exceed the page limits set by Local Rule 3.01 of the Local Rules of the United States District Court for the Middle District of Florida (Local Rule(s)).  Although the Court did not strike these filings, the Court admonishes counsel to comply with the Local Rules in future filings.

[2]  For the purposes of resolving the Motion, the Court views all disputed facts and reasonable inferences in the light most favorable to Irving.  The Court notes that these facts may differ from those ultimately proved at trial.  See Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002).

Notice of Filing, Ex. 2: Deposition of Jennifer Turner (Doc. 39-2; Turner Dep.) at 37. Irving is a Black female, and Newbern is a White male. <u>See</u> Irving Dep. at 10; Defts.' Notice of Filing, Ex. 6: NCIC/FCIC and DAVID Information (Doc. 39-6; DAVID Information) at 2. They drove to the store in Irving's black 2001 Mazda B4000 pickup truck with an extended cab. <u>See</u> Irving Dep. at 23–24. The truck was registered in Irving's name with a license plate number of IAEC28. <u>See</u> <u>id.</u> at 24, 45. This small Mazda truck is similar to little Nissan trucks and Ford Rangers. <u>See</u> Pl.'s Notice of Filing, Ex. 7: Defendant Michael Landis's Sworn Recorded Statement to State Attorney's Office (Doc. 46-7; Landis State Ct. Dep.) at 01:25–01:55; Pl.'s Notice of Filing, Ex. 11: 911 Composite Audio (Doc. 46-11; Recorded Calls) at 01:35–01:55.

According to Irving, Newbern entered the store first to shop for lunch meat. <u>See</u> Irving Dep. at 25–26. Irving states that, after about five minutes, she went into the store to ask about an advertisement for a cell phone. <u>See</u> <u>id.</u> at 25. Irving testifies that she was holding only her cell phone and keys when she went into the store. <u>See</u> <u>id.</u> at  26; Pl.'s Notice of Filing, Ex. 1: Affidavit of Hattie Irving in Opposition to Defendants' Motion for Summary Judgment (Doc. 46-1; Irving Aff.) at 3. Irving declares that Turner, the store manager, showed her the cell phone but she left the store after learning that the cell phone was more expensive than the advertised price. <u>See</u> Irving Dep. at 27, 29; Irving Aff.

at 2. Irving did not return or purchase any items and did not look at earbuds or landline phones. See Irving Dep. at 29, 33.

After Irving left the store, Turner called the Suwannee County Sheriff's Office and reported that a fraudulent return had just occurred. See Turner Dep. at 92; Recorded Calls at 00:05–00:15. Turner told the sheriff's office dispatcher that a woman had just stolen from the store and driven away in a truck with the tag number IAEZ28. See Recorded Calls at 00:05–01:10. The dispatcher found that the tag number was registered to a BMW SUV. See id. at 01:40–01:50. Turner replied that the SUV could not be right because she saw a small black older pickup truck, like a little Nissan, with an extended cab. See id. at 01:35–01:55. Turner also mentioned that she was viewing a video of the incident. See id. at 01:45–01:55. During a separate call, Turner explained to the dispatcher that the woman had entered the store with a bag and a water bottle, taken headphones and a telephone off the shelf, and done a return with those items. See id. at 06:25–06:45. Turner confirmed that the cashier had finished with the return while Turner was in the office "trying to get the cameras up." Id. at 06:45–06:55.

The dispatcher sent Landis to the Family Dollar, telling him that Turner had reported a "theft kind of deal" involving somebody returning items. Defts.' Notice of Filing, Ex. 3: Videoconference Deposition of Michael Landis (Doc. 39-3; Landis Dep.) at 6; Recorded Calls at 03:25–03:50. The dispatcher told Landis

to look for a Black female and a White male in a small black truck with an extended cab.  See Landis Dep. at 7.  When Landis arrived at the Family Dollar, Turner told him that the woman had returned an unopened landline phone and earbuds without a receipt.  See Turner Dep. at 114; Landis State Ct. Dep. at 00:45–01:20; Defts.' Notice of Filing, Ex. 4: Incident Report (Doc. 39-4; Incident Report) at 3.  Turner explained to Landis that she had watched the surveillance video and seen the woman enter the store with nothing other than a plastic bag and a water bottle.  See Incident Report at 3; Landis State Ct. Dep. at 00:55–01:05; Landis Dep. at 17.

At some point while Landis was at the store, Turner gave him a receipt. See Turner Dep. at 62; Landis Dep. at 9, 11.  The front of the receipt showed a return transaction for a landline phone and a pair of earbuds.  See Pl.'s Notice of Filing, Ex. 12 (Doc. 46-12; Front of Receipt).  The receipt had a phone number for the customer and a signature.  See id.  Even though Landis admits that looking at receipts and signatures is important when investigating crimes, he did not call the phone number on the receipt or try to compare the signature on the receipt to the signature on Irving's driver's license.[3]  See Landis Dep. at 23.

The back of the receipt had Turner's handwritten notes: "Black truck," "ZEI," "Ford Ranger 95 model," "Blk female," "Subway," and "IAEZ28."  See

---

[3] Irving says that the signature on the receipt is not hers.  See Irving Dep. at 54; see also Pl.'s Notice of Filing, Ex. 14 (Doc. 46-14).

Defts.' Notice of Filing, Ex. 5 (Doc. 39-5; Back of Receipt); Pl.'s Notice of Filing, Ex. 9: Defendant Jennifer Turner's Sworn Recorded Statement to State Attorney's Office (Doc. 46-9; Turner State Ct. Dep.) at 2:10–2:25.   Turner received the information about Subway and the number IAEZ28 from another customer who said that he had followed the black truck to a Subway and written down the license plate number.  See Turner State Ct. Dep. at 2:10–2:25, 09:35–09:50.  After seeing that the license plate number IAEZ28 was registered to a BMW, Landis asked Turner if there could be a mistake in the tag number.  See Landis Dep. at 15.  He then tried IAEC28.  See id. at 16.  IAEC28 was registered to Irving's black Mazda pickup truck.  See DAVID Information at 1.  Landis showed Irving's driver's license photograph to Turner, and Turner identified Irving as the thief.  See Turner Dep. at 115; Landis Dep. at 16.

Landis never spoke with Irving.  Landis Dep. at 19.  Irving was not at the Family Dollar when Turner called the sheriff's office or when Landis showed up to investigate.  See Irving Dep. at 30–31.  Because the address on Irving's driver's license was in Dixie County, Florida, Landis asked the Dixie County Sheriff's Office for assistance in locating Irving.  See Incident Report at 4.  The Dixie County Sheriff's Office did not respond.  See id.; Landis State Ct. Dep. at 03:15–03:30.

Turner and Landis say that they reviewed the store's surveillance video together in the store's office.  See Landis Dep. at 16; Turner Dep. at 121.  Landis

testifies that the video shows the same course of events that Turner describes. Landis Dep. at 16.  But Landis did not mention watching the video himself in the Incident Report prepared on March 25, 2018, or in his deposition in the subsequent criminal case.  See Incident Report at 3–4; Landis State Ct. Dep. Landis maintains that failing to mention viewing the video in his Incident Report was an oversight.  See Landis Dep. at 21.  Landis left the Family Dollar without obtaining a copy of the video.  See Incident Report at 4.  In his Incident Report, Landis said that the surveillance video would be obtained at a later date.  See id.  Landis testifies that he asked Family Dollar several times for the video over the course of two years but never got it.  See Landis Dep. at 21.

On March 26, 2018, Landis forwarded a copy of his Incident Report to the Office of the State Attorney of the Third Judicial Circuit of Florida and filed a probable cause affidavit requesting a capias for Irving's arrest on charges of dealing in stolen property and shoplifting.  See Defts.' Notice of Filing, Ex. 7: Request for Capias (Doc. 39-7; Request for Capias); Incident Report at 4.  On May 21, 2018, the state attorney's office filed an information charging Irving with engaging in an on-going course of conduct with the intent to defraud.  See Defts.' Notice of Filing, Ex. 8: Information (Doc. 39-8).  Two days later, the Clerk of the Circuit Court of the Third Judicial Circuit issued a capias for Irving's arrest on the Information.  Defts.' Notice of Filing, Ex. 9: Capias (Doc. 39-9; Capias).  In June 2018, officers in Alachua County arrested Irving on the

warrant.  <u>See</u> Irving Dep. at 35–37.  She spent four days in jail.  <u>See</u> <u>id.</u> at 36–37.

During the criminal case, Irving's defense attorneys asked for a copy of the store's surveillance video but never received it.  <u>See</u> Pl.'s Notice of Filing, Ex. 16: Supplemental Demand for Discovery (Doc. 46-16).  According to Turner, the video of March 24 had disappeared, even though the videos of the day before and the day after were available.  <u>See</u> Turner State Ct. Dep. at 03:55–04:00.  On January 16, 2019, the state attorney's office dismissed the case against Irving for insufficient evidence to obtain a conviction.  <u>See</u> Defts.' Notice of Filing, Ex. 10: Notice of Nolle Prosequi (Doc. 39-10).

Landis has since admitted that he was inaccurate in at least two of his statements during the criminal investigation and prosecution.  In his Incident Report, Landis said that Turner advised him that the tag number was IAEC28.  <u>See</u> Incident Report at 4.  But Landis now states that Turner only provided him with the tag number IAEZ28.  Landis Dep. at 27.  Similarly, in his deposition during the criminal case, Landis represented that Turner had told him that she had immediately gone outside and written down the tag number of Irving's truck when the truck pulled up.  <u>See</u> Landis State Ct. Dep. at 02:00–02:15.  But Landis now testifies that Turner did not tell him that she had gotten the tag number herself.  <u>See</u> Landis Dep. at 8–9.

## II.    Procedural History

Irving initiated this action on August 27, 2021, by filing a complaint in the Circuit Court of the Third Judicial Circuit, in and for Suwannee County, Florida, against Landis, St. John, Turner, and Family Dollar Stores, LLC.  See State Court Docket (Doc. 1-2), filed October 6, 2021.  St. John and Landis removed the case to this Court on October 6, 2021.  See Notice of Removal (Doc. 1).  With leave of the Court, Irving filed the currently operative Complaint on October 28, 2021.  See generally Complaint.  Irving brings two claims in the alternative under 42 U.S.C. § 1983 against Landis in his individual capacity for false arrest (Count I) and malicious prosecution (Count II) in violation of the Fourth Amendment to the United States Constitution.  See Complaint ¶¶ 42–54.  Irving next asserts a state law false arrest claim (Count III) against St. John in his official capacity as Sheriff of Suwannee County.  See id. ¶¶ 55–61.  Finally, Irving alleges a state law malicious prosecution claim against Landis (Count VI).  See id. ¶¶ 81–89.

Originally, Irving also asserted state law negligence claims against St. John (Count IV) and Family Dollar Stores (Count V) and a state law malicious prosecution claim against Turner (Count VII).  See id. ¶¶ 62–80, 90–98.  On July 7, 2022, Irving voluntarily dismissed the claims against Family Dollar Stores and Turner (Counts V and VII).  See Plaintiff's Notice of Dismissal as to Defendants Family Dollar Stores, LLC and Jennifer Turner, Individually (Doc.

37), filed July 7, 2022; Order of Dismissal (Doc. 38), filed July 8, 2022.  And on August 9, 2022, the Court granted St. John's motion to dismiss Count IV.  See Order (Doc. 43).   In their current Motion, Defendants move for summary judgment in their favor on the remaining claims (Counts I, II, III, and VI).

## III.   Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure (Rule(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a).  The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Rule 56(c)(1)(A).[4]  An issue is genuine when the evidence is such

---

[4] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions."  Rule 56 Advisory Committee's Note 2010 Amends.

> The standard for granting summary judgment remains unchanged.  The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law.  The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id.  "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive."  Campbell v. Shinseki, 546 F. App'x 874, 879 n.3 (11th Cir. 2013).  Thus, case law construing the former Rule 56 standard of review remains viable and is applicable here.

In citing to Campbell, the Court notes that it does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point.  See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir.

that a reasonable jury could return a verdict in favor of the nonmovant.  See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)).  "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment."  Kesinger ex rel. Est. of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial.  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593–94 (11th Cir. 1995) (internal citations and quotation marks omitted).  Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson, 477 U.S. at 248; see also McCormick v. City of

_____

2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Ft. Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) ("The mere existence of some factual dispute will not defeat summary judgment unless the factual dispute is material to an issue affecting the outcome of the case.").   In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

## IV.   Discussion

Defendants argue that the Court should grant summary judgment in their favor as to all remaining claims because the undisputed facts show that Landis conducted a reasonable investigation and had probable cause to believe that Irving had committed theft. See Motion at 2, 12–13; Reply at 7–8.  In her Response, Irving contends that there are genuine disputes of material facts and that a reasonable jury could find that she was unlawfully arrested without probable cause. See Response at 2.  Having carefully reviewed the record, the applicable law, and the parties' arguments, the Court finds that the Motion is due to be granted.

### A.    § 1983 Claims

In Counts I and II, Irving asserts that Landis violated her Fourth Amendment rights by procuring a false arrest and malicious prosecution in

violation of 42 U.S.C. § 1983.  <u>See</u> Complaint at ¶¶ 42–54.  "[S]ection 1983 provides individuals with a federal remedy for the deprivation of rights, privileges, or immunities protected by the Constitution or the laws of the United States that are committed under color of state law."  <u>Brown v. City of Huntsville</u>, 608 F.3d 724, 733 n.12 (11th Cir. 2010) (citation omitted); <u>see</u> 42 U.S.C. § 1983.  Thus, to state a claim for relief under § 1983, a plaintiff must sufficiently allege that he or she was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."  <u>Focus on the Family v. Pinellas Suncoast Transit Auth.</u>, 344 F.3d 1263, 1276–77 (11th Cir. 2003) (quotation omitted).  "The Fourth Amendment . . . guarantees the right against <u>unreasonable</u> searches and seizures."  <u>Brown</u>, 608 F.3d at 734 n.15 (emphasis added).  "An arrest without probable cause violates the Fourth Amendment."  <u>Id.</u>

In considering Count I—Irving's false arrest claim—the Court first observes that Landis did not actually arrest Irving, and Irving's eventual arrest was executed pursuant to a warrant issued by a state court.  <u>See</u> Irving Dep. at 35–37; Capias at 1.  "An arrest without a warrant and lacking probable cause violates the Constitution and can underpin a § 1983 claim . . . ."  <u>Brown</u>, 608 F.3d at 734.  However, when an individual is arrested pursuant to a warrant, and where that individual asserts the warrant was invalid, the Eleventh Circuit has directed that the proper claim for relief is that of malicious prosecution,

rather than false arrest.  <u>See</u> <u>Williams v. Aguirre</u>, 965 F.3d 1147, 1158 (11th Cir. 2020) ("A claim of false arrest or imprisonment under the Fourth Amendment concerns seizures without legal process, such as warrantless arrests. . . .  Malicious prosecution, in contrast, requires a seizure 'pursuant to legal process.'  Of course, warrant-based seizures fall within this category." (citations omitted) (quoting <u>Black v. Wigington</u>, 811 F.3d 1259, 1267 (11th Cir. 2016))); <u>Carter v. Gore</u>, 557 F. App'x 904, 906 (11th Cir. 2014) ("The issuance of a warrant—even an invalid one. . .—constitutes legal process, and thus, where an individual has been arrested pursuant to a warrant, his claim is for malicious prosecution rather than false arrest."); <u>Harris v. Johnson's Giant Foods, Inc.</u>, No. 2:16-cv-1646-RDP, 2017 WL 6336330, at *5 (N.D. Ala. Dec. 12, 2017) (arrest pursuant to a warrant, albeit allegedly invalid, gives rise to a malicious prosecution claim).  Here, because the record establishes that Irving was arrested pursuant to a warrant, her false arrest claim fails.  Therefore, summary judgment is due to be granted in favor of Landis on Count I.

To prevail on her malicious prosecution claim in Count II, Irving must prove "a violation of [her] Fourth Amendment right to be free from unreasonable seizures, as well as the elements of the common law tort of malicious prosecution." <u>Zargari v. United States</u>, 658 F. App'x 501, 506 (11th Cir. 2016).  "[T]he constituent elements of the common law tort of malicious prosecution include[ ]: (1) a criminal prosecution instituted or continued by the

present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." Paez v. Mulvey, 915 F.3d 1276, 1285 (11th Cir. 2019) (internal citation and quotation marks omitted). Under both federal and Florida law, "[f]or probable cause to exist, . . . an arrest must be objectively reasonable based on the totality of the circumstances." Lee, 284 F.3d at 1195. This standard is met when "a reasonable officer could conclude . . . that there was a substantial chance of criminal activity." Washington v. Howard, 25 F.4th 891, 902 (11th Cir. 2022) (alteration in original) (quoting District of Columbia v. Wesby, 138 S. Ct. 577, 588 (2018)).[5]

As relevant here, the Eleventh Circuit has recognized that a law enforcement officer who procures an arrest through applying for an arrest warrant can be liable for malicious prosecution if the plaintiff establishes (1) "that the legal process justifying [her] seizure was constitutionally infirm" and (2) "that [her] seizure would not otherwise be justified without legal process." Williams, 965 F.3d at 1165. Irving can establish that the legal process justifying her seizure was constitutionally infirm if she shows either that Landis "should have known that his application failed to establish probable

---

[5] In Washington, the Eleventh Circuit rejected an older standard that required "facts and circumstances . . . [that] would cause a prudent person to believe . . . that the suspect has committed, is committing, or is about to commit an offense.'" 25 F.4th at 899, 902 (second and third alterations in original) (quoting Hardigree v. Lofton, 992 F.3d 1216, 1230 (11th Cir. 2021)). In this case, the Court's analysis leads to the same result under either standard.

cause" or that Landis "intentionally or recklessly made misstatements or omissions necessary to support the warrant." Id.

Here, the undisputed facts show that Landis's Request for Capias and Incident Report established probable cause.  As recounted in the Incident Report, Landis had probable cause to believe that Irving had committed a crime because of Turner's report.  Turner told Landis that Irving had returned an unopened landline phone and earbuds without a receipt and that the video showed Irving entering the store without those items. See Turner Dep. at 114; Landis State Ct. Dep. at 00:45–01:20; Incident Report at 3; Landis Dep. at 17. Landis summarized Turner's description of events in his Incident Report:

> Turner stated that the black female was carrying a clear plastic bag with what appeared to be a bottle of water inside of the bag. Turner advised the black female then was caught on surveillance video walking in the aisle where some electronics are on display. Turner stated the black female then approached the customer service counter and said she wanted to return an Emerson CID telephone (value $11.00) and a pack of Audio Warrior 2 Sport Ear Buds (value $15.00), but did not have a receipt.
>     Turner advised per Family Dollar policy, she accepted the items for return and issued the black female a gift card for the amount of $27.82.

Incident Report at 3.  Based on this description of events "a reasonable officer could conclude . . . that there was a substantial chance" that Irving entered the store without electronics, picked up electronics off the shelf, and fraudulently returned those stolen items. Washington, 25 F.4th at 902.  Turner's eyewitness report of the alleged crime gave Landis probable cause in the absence of any

reason to doubt Turner's description.  See Knight v. Jacobson, 300 F.3d 1272, 1275 (11th Cir. 2002) ("By the time he finished talking with Knight's ex-girlfriend, Officer Jacobson had heard enough to warrant a prudent person in believing that Knight had [committed assault]."); see also Rankin v. Evans, 133 F.3d 1425, 1441 (11th Cir. 1998) ("Generally, an officer is entitled to rely on a victim's criminal complaint as support for probable cause.").

Irving argues that Landis had a reason to doubt the validity of Turner's description of events after Turner said that she went outside to write down the truck's tag number as soon as the truck arrived.  See Response at 14.  During his deposition in the criminal case, Landis said that Turner had told him that she went outside as soon as the truck pulled up and wrote down the tag number.[6]  See Landis State Ct. Dep. at 02:00–02:15.  According to Irving, Landis should have questioned why Turner would have written down the tag number before the transaction occurred.  See Response at 14.  But, even if Turner made that statement, a reasonable officer could have found it to be merely an innocent misstatement of the sequence of events.  Irving cites no authority suggesting that this minor comment required Landis to be suspicious of Turner's otherwise consistent and detailed report.

---

[6] This version of events is almost certainly not what happened because Turner has consistently explained how she got the tag number and Landis now says that he remembered incorrectly at the deposition in the criminal case.  See Landis Dep. at 8–9.

Irving also asserts that Landis should have known that Turner was lying about the surveillance video because Turner told the dispatcher that she had to "get the cameras up."[7]  Response at 8.  This argument is unpersuasive for two reasons.  First, there is no evidence that Landis knew of Turner's statement to the dispatcher about getting the cameras up.  <u>See</u> Recorded Calls at 06:45–06:55.  Second, "getting the cameras up" reasonably implies that Turner needed to get the video feed pulled up on the monitors.  When paired with Turner's unambiguous description of what she saw on the surveillance video, the statement about getting the cameras up does not reasonably support an inference that the cameras were inoperable.  Therefore, the record establishes that Landis reasonably believed that the video existed.

In addition, Irving questions how Landis identified her.  <u>See</u> Response at 8, 12.  Landis recounted in his Incident Report that Turner described the alleged thief as a Black woman with a White male companion and a black pickup truck.  <u>See</u> Incident Report at 3; Turner Dep. at 114.  Irving and her truck matched that description.  <u>See</u> Incident Report at 4.  In his Incident Report, Landis represented that he identified Irving through her license plate number "IAEC28."  <u>See</u> <u>id.</u>  Notably, Turner provided the number IAEZ28, but she

---

[7]  Irving represents that Turner said she had to "get the video up <u>and running</u>."  Response at 13 (emphasis added).  Turner did not say "and running."  <u>See</u> Recorded Calls at 06:45–06:55.

acknowledged that the number could be wrong when advised it was registered to a BMW SUV, not the little truck that she described.  See Recorded Calls at 00:10–01:55.  Landis searched IAEC28, which was only one character different, which yielded a result of a small black truck owned by a Black woman.  So Landis incorrectly stated in the Incident Report that "Turner advised" that the tag number was IAEC28, Incident Report at 4, when in fact identifying IAEC28 as the tag number followed from his investigation based on the information provided by Turner.  See Landis Dep. at 15–16.  Importantly, it is undisputed that, when shown a driver's license photograph of Irving, Turner identified Irving as the thief.  See Turner Dep. at 115; Landis Dep. at 16; Incident Report at 4.  Based on these facts, it was reasonable for Landis to list Irving as the suspect in his Incident Report.

Moreover, Irving admits that she was at the store, see Irving Dep. at 23–24, and she does not even argue, much less point to evidence, that Turner was reporting the conduct of another Black woman with a White male in a small black pickup truck with a license plate number similar to IAEZ28.  Consequently, all of Irving's arguments questioning how Landis identified her are unavailing.[8]  Turner correctly identified the woman who was at the store,

_____

[8]  For example, Irving argues that Landis should have investigated the signature and phone number on the return receipt.  See Response at 8.  But Landis had no reason to call the telephone number or look at the signature on the receipt because Turner identified Irving as the individual from her photograph.

and Landis matched her vehicle to that described by Turner with the license plate off by one digit. Thus, Irving has not presented any evidence from which a reasonable jury could conclude that, based on the totality of circumstances, Landis "should have known that his application failed to establish probable cause." Williams, 965 F.3d at 1165.

Next, Irving asserts that the process leading to her arrest was constitutionally infirm because Landis "knowingly made materially false statements in his incident report." Response at 2, 12. Defendants argue that Landis's misstatements were merely mistakes. See Reply at 6–7. If Irving shows that Landis made a false statement in his Incident Report or Request for Capias, the Court must consider "(1) whether [the statement] was 'made either intentionally or in reckless disregard for the truth and, if so, (2) whether, after deleting the misstatement[ ], the affidavit is insufficient to establish probable cause.'" Williams, 965 F.3d at 1165 (second alteration in original) (quoting Paez, 915 F.3d at 1287). The only evidence of a false statement in the Incident Report relates to Landis's statement that "Turner advised she copied the Florida tag number . . . as IAEC28." Incident Report at 4. Even if the Court assumes that Landis included this misstatement intentionally or recklessly, the remaining portions of the Incident Report and Request for Capias support a finding of probable cause. The remaining statements include that (1) Turner saw that Irving was carrying a plastic bag with a water bottle when she entered

the store; (2) Irving went to the aisle with electronics and removed two items from the shelf; (3) Irving returned those two items without a receipt; and (4) Turner positively identified Irving by her driver's license. <u>See</u> <u>id.</u> at 3–4; Request for Capias at 1. Even "after deleting the misstatement[ ]," Landis's Incident Report and Request for Capias were sufficient "to establish probable cause." <u>Williams</u>, 965 F.3d at 1165 (alteration in original). Although Irving makes several other arguments attacking Landis's credibility, <u>see</u> Response at 5–6, 20–21, she has not established a genuine dispute about the key fact that Turner credibly described a crime to Landis and identified Irving as the perpetrator of that crime. Accordingly, because Landis had probable cause to support his Request for Capias, Irving has not shown "that the legal process justifying [her] seizure was constitutionally infirm." <u>Williams</u>, 965 F.3d at 1165.

Irving further argues that Landis violated her rights by conducting a constitutionally inadequate investigation. Specifically, she contends that, "if the store manager told Deputy Landis that she viewed video surveillance of Ms. Irving committing a crime, a reasonable officer under the same circumstances would have taken every reasonable effort to view the video." Response at 12. There is a dispute of fact about whether Landis watched the video. Landis and Turner say that he watched the video. <u>See</u> Landis Dep. at 16; Turner Dep. at 121. But, despite specifically mentioning that Turner watched the surveillance

video, Landis did not mention watching the video himself in his Incident Report or in his deposition in the criminal case.  <u>See</u> Incident Report at 3–4; Landis State Ct. Dep.  In addition, if Irving accurately described what she did in the store, the video could not have shown what Landis represents it showed.  <u>See</u> Landis Dep. at 16; Irving Dep. at 25–33.  Thus, to resolve the Motion, the Court will accept Irving's version of events that Landis did not watch the video.

However, this dispute of fact is not material because Irving cites no authority for her argument that the Fourth Amendment required Landis to view the video in this circumstance.[9]  <u>See</u> Response at 12.  It is true that "[a]n arresting officer is required to conduct a reasonable investigation to establish probable cause."  <u>Rankin</u>, 133 F.3d at 1435.  The Eleventh Circuit has held that "in evaluating probable cause, an officer may not 'unreasonably disregard[ ] certain pieces of evidence' by 'choos[ing] to ignore information that has been offered to him or her' or 'elect[ing] not to obtain easily discoverable facts' that might tend to exculpate a suspect."  <u>Cozzi v. City of Birmingham</u>, 892 F.3d 1288, 1294 (11th Cir. 2018) (alterations in original) (quoting <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1229, 1233 (11th Cir. 2004)).  Indeed, a reasonable officer "may not turn a blind eye to evidence suggesting that a suspect is innocent."  <u>Id.</u>

_____

[9] Irving generally cites to <u>Rankin</u>, 133 F.3d 1425, for the proposition that "Landis failed to complete a reasonable investigation to determine whether a crime had been committed."  Response at 12.  But Irving does not explain how Landis's investigation compares to the defendants' investigation in <u>Rankin</u>.  Notably, the court there found that the defendants' investigation was reasonable and established probable cause.  <u>See</u> <u>Rankin</u>, 133 F.3d at 1443.

at 1297.  "An officer, however, need not take 'every conceivable step . . . at whatever cost, to eliminate the possibility of convicting an innocent person.'" Rankin, 133 F.3d at 1436 (alteration in original) (quoting Tillman v. Coley, 886 F.2d 317, 321 (11th Cir. 1989)).

Here, Irving points to no evidence that Landis turned a blind eye to evidence suggesting that Irving was innocent.  Turner told Landis that Irving entered without a landline phone and earbuds, walked to the shelf where a landline phone and earbuds were displayed, and then went to the register to return a landline phone and earbuds without a receipt.  See Incident Report at 3–4; Landis State Ct. Dep. at 00:55–01:05; Landis Dep. at 17.  A fraudulent return is an entirely reasonable explanation of those events, and Landis knew of no facts that contradicted that explanation.  Because Landis had no reason to believe that Turner was lying and that the surveillance video would show Irving to be innocent, he did not unreasonably disregard exculpatory evidence.[10]

---

[10]  Alternatively, even if Landis violated the Fourth Amendment by failing to review the video, he is entitled to qualified immunity because it was not clearly established that he was required to watch the surveillance video.  In Washington v. Rivera, the Eleventh Circuit found that the defendant was entitled to qualified immunity when she did not "intentionally disregard[ ] pertinent exculpatory information."  939 F.3d 1239, 1249 (11th Cir. 2019). Similarly, Irving points to no evidence to support even an inference that Landis intentionally disregarded pertinent exculpatory information because nothing suggested that the video would be exculpatory.

In the Court's view, the undisputed evidence sufficiently establishes that Landis had probable cause to file his Request for Capias.[11]  Moreover, the record establishes that he conducted a constitutionally adequate investigation.[12]  Therefore, because Landis did not violate Irving's constitutional rights, his Motion seeking summary judgment in his favor as to the claims in Counts I and II is due to be granted.

### B.   State Law Claims

In Count III, Irving asserts a false arrest claim against St. John in his official capacity pursuant to Chapter 768 of the Florida Statutes, see Complaint ¶¶ 55–61, and in Count VI, Irving brings a state law malicious prosecution claim against Landis, see id. ¶¶ 81–89.  Under Florida law, "[f]alse arrest is defined as the unlawful restraint of a person against that person's will," but "probable cause is an affirmative defense" to that intentional tort.  Willingham

---

[11]  Relying on Grider v. City of Auburn, 618 F.3d 1240 (11th Cir. 2010), Irving argues that the Court cannot grant summary judgment here because Irving's description of what she did in the store is completely different from Landis and Turner's version of the facts.  See Response at 17–18.  In Grider, the officer and the plaintiff were both present at the time of the alleged offense, and they described irreconcilably different versions of what occurred.  618 F.3d at 1258.  Unlike the officer in Grider, Landis was not present at the scene during the alleged offense.  Thus, what Irving actually did in the store is immaterial to the relevant question here: Did Landis have probable cause based on the information that he had?  As discussed above, Landis had probable cause based on Turner's description of the events.

[12]  Landis also argues that he is entitled to qualified immunity.  See Motion at 26–28.  In light of the Court's finding on the merits that Landis did not violate Irving's constitutional rights, the Court need not separately discuss qualified immunity.  See Pearson v. Callahan, 555 U.S. 223, 232, 236 (2009).

<u>v. City of Orlando</u>, 929 So. 2d 43, 48 (Fla. 5th DCA 2006). Malicious prosecution

requires proof of:

> (1) The commencement or continuance of an original criminal or civil judicial proceeding. (2) Its legal causation by the present defendant against plaintiff who was defendant in the original proceeding. (3) Its bona fide termination in favor of the present plaintiff. (4) The absence of probable cause for such proceeding. (5) The presence of malice therein. (6) Damage conforming to legal standards resulting to plaintiff.

<u>Jackson v. Navarro</u>, 665 So. 2d 340, 341–42 (Fla. 4th DCA 1995) (quoting <u>Burns</u>

<u>v. GCC Beverages, Inc.</u>, 502 So. 2d 1217, 1218 (Fla. 1986)). "If any one of these

elements is lacking, the result is fatal to the action." <u>Id.</u> (quoting <u>Burns</u>, 502

So. 2d at 1218).

For the same reasons discussed above, the Court finds that Landis had

probable cause to file his Request for Capias based on Turner's description of

the crime and identification of Irving. <u>See</u> <u>Weissman v. K-Mart Corp.</u>, 396 So.

2d 1164, 1167 (Fla. 3d DCA 1981) ("The information furnished to officer Barnett

by Mr. Alvarez was sufficient to provide him with probable cause to believe that

Mr. Weissman had shoplifted. First hand knowledge by an officer is not

required; the receipt of information from someone who it seems reasonable to

believe is telling the truth is adequate." (citations omitted)). The existence of

probable cause establishes an affirmative defense that bars Irving's state law

false arrest claim,[13] and it shows that Irving cannot prove an element of her state law malicious prosecution claim.[14] Therefore, summary judgment is due to be granted in favor of Landis on Count VI and St. John on Count III.

_____

[13] In addition to asserting that Landis had probable cause, St. John argues that Irving's state law false arrest claim against St. John (Count III) fails because Irving was arrested by another law enforcement agency pursuant to a facially valid warrant. See Motion at 28–31. Irving does not respond to this argument. It is a settled principle under Florida law that an arrest pursuant to lawful authority, even if irregular or voidable, cannot be false, and the appropriate remedy is a claim for malicious prosecution. Jackson, 665 So. 2d at 341–42. Indeed, "if there is legal process or due authority apart from it, the arrest is not 'false' and the action must be one of malicious prosecution." Id. (quoting William L. Prosser, Law of Torts, § 119 (4th ed. 1971)). The Florida Supreme Court has long recognized that "the distinction between malicious prosecution and false imprisonment is fundamental." S.H. Kress & Co. v. Powell, 180 So. 757, 762 (Fla. 1938).

> [T]he essential difference between a wrongful detention for which malicious prosecution will lie, and one for which false imprisonment will lie, is that in the former the detention is malicious but under the due forms of law, whereas in the latter the detention is without color of legal authority. In malicious prosecution plaintiff must allege and prove malice and want of probable cause and the termination of the proceeding favorably to plaintiff, whereas in false imprisonment the allegation of want of probable cause is not essential, and the burden is on defendant to prove probable cause as a defense or in mitigation. Malice is material only on the issue of damages, and the termination of the proceeding is not material. If the imprisonment is under legal authority it may be malicious but it cannot be false. This is true where legal authority is shown by valid process, even if irregular or voidable. Void process will not constitute legal authority.

Id. (quotations omitted). Florida courts have since refined the distinction as follows: "[Malicious prosecution] arises out of the wrongful commencement of a judicial proceeding, while [false imprisonment] occurs when there is an improper restraint which is not the result of a judicial proceeding." Jackson, 665 So. 2d at 342. Where a plaintiff alleges that he was arrested or imprisoned as a result of malicious proceedings against him, damages arising from such arrest are "part of the damages resulting from malicious prosecution because in such a case, while the prosecution may have been commenced and carried out maliciously, the imprisonment is under process regular and in legal form issued by lawful authority and the resulting imprisonment is not false." Id. Because Irving was arrested on a facially valid capias and Irving has produced no evidence that the warrant was void, summary judgment in favor of St. John on the false arrest claim (Count III) is due to be granted for this reason as well.

[14] Similar to federal law, "Florida law requires an arresting officer to conduct a reasonable investigation in order to determine if probable cause exists to arrest a person, 'but

## V.      Conclusion

What Irving actually did at the Family Dollar in Branford, Florida, is disputed.  But there is no genuine dispute about the fact that Turner credibly reported a crime to Landis and identified Irving as the culprit.  Therefore, Landis had probable cause to seek Irving's arrest.  Because the existence of probable cause defeats each of Irving's claims, the Court will grant Defendants' Motion and enter summary judgment in favor of Landis on Counts I, II, and VI and in favor of St. John on Count III.  Accordingly, it is

**ORDERED:**

1.      The Motion for Summary Judgment by Defendants Sam St. John, in His Official Capacity, and Michael Landis (Doc. 40) is **GRANTED**.

2.      The Clerk of the Court is directed to enter **JUDGMENT** in favor of Defendants Sam St. John, in his official capacity as Sheriff of Suwannee County, and Michael Landis, in his individual capacity.

---

the officer does not have to take every conceivable step to eliminate the possibility of convicting an innocent person.'" <u>Harder v. Edwards</u>, 174 So. 3d 524, 534 (Fla. 4th DCA 2015) (quoting <u>City of Clearwater v. Williamson</u>, 938 So. 2d 985, 990 (Fla. 2d DCA 2006)).  Here, as discussed above, Landis conducted a reasonable investigation and was not legally required to do more.

3.     The Clerk of the Court is further directed to terminate any

remaining pending motions and deadlines and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, on November 22, 2022.


**MARCIA MORALES HOWARD**
United States District Judge


lc30
Copies to:

Counsel of Record